UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ANTHONY ALSTON, JR.,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SACRAMENTO; SGT. HAMM, #3018; OFFICER DELGADO, #358; OFFICER MELLOCH, #602,<br><br>Defendants. | No. 2:21-cv-2049 TLN AC PS<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is proceeding in this action pro se and the case was accordingly referred to the undersigned by Local Rule 302(c)(21). On August 1, 2022, plaintiff moved for summary judgment. ECF No. 18. Defendant opposes the motion. ECF No. 22. Plaintiff has replied. ECF No. 23. For the reasons explained below, plaintiff's motion should be DENIED.

**I.      Complaint and Procedural Background**

Plaintiff filed this civil rights action under 42 U.S.C. § 1983 for violations of his First, Fourth, Fifth, and Fourteenth Amendment rights, along with related state law claims, on November 5, 2021. ECF No. 1. Plaintiff paid the filing fee and did not seek in forma pauperis status,[1] so the complaint was not screened under 28 U.S.C. § 1915(e)(2). Plaintiff filed an early

---

[1] See initial docket entry dated November 5, 2021.

1

motion for summary judgment (ECF No. 7) which was withdrawn during the initial scheduling conference (ECF No. 15). At that conference, the court conferred with the parties and set a discovery deadline of February 2, 2023, and a dispositive motions deadline of July 31, 2023. ECF No. 16. Trial is currently scheduled for November 27, 2023. Id.

The complaint alleges as follows. On October 6, 2021, plaintiff attended a celebration of life for his cousin at a family member's home in the Meadowview area of Sacramento. ECF No. 1 at 3. Plaintiff was in the house cooking around 9:30 p.m., when gunshots were heard outside. Id. Plaintiff dropped to the ground and called the authorities around 9:43 pm. Id. Shortly after, plaintiff saw through the front door that multiple members of the Sacramento Police Department had arrived. Id. He walked with his hands up toward the police to offer his assistance and tell them what happened. Id.

While plaintiff was walking through the grass, defendant Officer Delgado suddenly and aggressively put plaintiff's hands behind his back and began to question him. Id. at 4. Officer Delgado handcuffed plaintiff tightly and placed him in the back of the patrol car, at which point plaintiff noticed there were multiple Black people handcuffed in patrol cars throughout the street. Id. Plaintiff asked what was going on and invoked his Fourth and Fifth Amendment privileges. Id. Defendant Officer Melloch and other officers told plaintiff to give his name, but plaintiff invoked his Fifth Amendment right to remain silent. Id. Plaintiff remained in the patrol car for over 10 minutes while tightly handcuffed and told the officers he was in pain. Id. Officer Melloch removed plaintiff's handcuffs, and plaintiff told Officer Melloch that he was going to record this interaction because his rights were being violated. Id. Officer Melloch took plaintiff's phone and told plaintiff he could not record because he was being detained. Id. The officers, including defendant Officer Hamm, did not give plaintiff any reason why he was being detained and continuously intimidated and threatened plaintiff, stating that he would be detained longer if he did not identify himself. Id. Plaintiff again informed defendant officers that he needed medical attention for injuries sustained by the handcuffs. Id.

Plaintiff remained detained for over one hour, while defendant officers refused to acknowledge that plaintiff had invoked his Fifth Amendment rights. Id. at 5. Plaintiff was

ultimately released from the patrol car, and members of the Sacramento Fire Department and Ambulance transported him to Kaiser South Sacramento, where plaintiff was treated for his wrist injuries with a wrist splint and pain medication.  Id.

## II. Standard for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248. In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Service, Inc., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

### III.    Statement of Undisputed Facts

Unless otherwise specified, the following facts are either expressly undisputed by the parties or have been determined by the court, upon a full review of the record, to be undisputed by competent evidence. Plaintiff's statement of undisputed facts is located at ECF No. 20, and defendants' statement in opposition is located at ECF No. 22-3. Plaintiff also submitted bodycam evidence to the court from defendants Officer Delgado, Officer Melloch, and Officer Cochran, and the Patrol Vehicle at the scene, as Exhibit A. Plaintiff submitted as Exhibit B a copy of the

Sacramento Police Department Report of the Crime Scene, and a copy of a local news story on racial inequities in pullovers and use of force as Exhibit C.  Defendants object to Exhibit C as hearsay and unauthenticated.  ECF No. 22-2 at 2.  The court has reviewed the exhibit and agrees it is unauthenticated hearsay, and therefore will not consider it.

On October 6, 2021, plaintiff encountered the defendant Officer Delgado in the front yard of a house and placed his hands in the air.  Delgado Body Camera, :30 mark.  Officer Delgado frisked and patted down plaintiff for weapons.  Id.  Plaintiff was asked if he was on probation or parole.  Id.; stipulated at ECF No. 22-3 at 2.  Plaintiff asserted his Fifth Amendment rights.  Delgado Cam. at :42.  Officer Delgado led plaintiff toward the street and placed him in handcuffs, explaining to plaintiff was being detained and "everyone is being detained."  Delgado Cam. at 1:42.  Plaintiff stated that he had done nothing wrong and was trying to assist the officer.  Id. at 2:15.  Plaintiff was led to a patrol car.  Id. at 3:00.  As plaintiff was placed in the patrol car, Officer Delgado again stated that everyone at the scene was being detained.  Id. at 3:37.  Plaintiff repeatedly stated that his Fourth Amendment rights were being violated.  Id. at 3:26.  While in the patrol car, plaintiff stated "I need medical, my arms hurt, I have a wrist issue sir."  Vehicle Cam. at 1:25.

While in the patrol car, plaintiff was asked his name, and plaintiff invoked his Fifth Amendment privileges.  Id. at 1:53.  Plaintiff and another individual were left in the patrol car, and plaintiff got the attention of an unidentified person outside the vehicle to tell them his arm was going numb.  Id. at 15:50.  An officer came to the patrol vehicle and plaintiff stated he had carpel tunnel syndrome and his arm was going numb.  Id. at 16:00.  Officer Melloch led plaintiff out of the vehicle and removed his handcuffs, and confiscated plaintiff's phone.  Id. at 18:00; ECF No. 22-3 at 9.  Plaintiff repeatedly asked Officer Cochran if he was suspected of shooting a firearm while in the petrol vehicle.  Cochran Cam at 1:49.  Plaintiff exited the patrol car after one hour and twenty-eight minutes and requested "medical."  Vehicle Cam. at 1:28.

////

////

////

## IV.   Analysis

In plaintiff's motion for summary judgment, he repeatedly argues that "defendants cannot prevail" as to his various claims. ECF No. 18. Plaintiff misunderstands the standard that applies to his summary judgment motion. Considering plaintiff's pro se status, the court will explain the legal standard again here, in plain language. As the plaintiff, Mr. Alston is the party with the ultimate burden of proof on each of his claims. A trial is the usual forum for a plaintiff to prove his claims. A summary judgment motion requests judgment in the moving party's favor without a trial, which is only appropriate where there are no factual disputes going to defendants' liability. If there are disputed facts that go to any element of a claim, or if plaintiff fails to produce evidence sufficient to support findings in his favor on each element of liability, summary judgment on that claim is not appropriate. For the reasons explained below, the undisputed facts before the court are insufficient for plaintiff to win summary judgment as to any of his claims.

### A.   Plaintiff is Not Entitled to Summary Judgment on his § 1983 Claims

Five of the eight causes of action alleged by plaintiff are based on 42 U.S.C. § 1983. See ECF No. 1 (First, Second, Third, Fifth, and Sixth Causes of Action). To establish a defendant's liability under § 1983, a plaintiff must prove that defendant's actions were taken "under color of state law" and resulted in the deprivation of a constitutional right or federal statutory right. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). "In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury." Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008). "To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." Id.

#### 1.   Municipal Liability

As a preliminary matter, the court notes that plaintiff has failed to meet his burden of proof against defendant City of Sacramento. There is no vicarious liability for municipalities under § 1983, meaning that a city is not legally responsible for what its officers and employees do. City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989). A municipality can only be held liable under 42 U.S.C. § 1983 if "action pursuant to official policy of some nature caused a

constitutional tort." Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978) (municipality may be liable when execution of a government's policy or custom inflicts the injury); Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir. 2007). A plaintiff seeking to establish Monell liability must prove both that he suffered a violation of a recognized federal right, and that the municipality's policy or custom caused or authorized the violation. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Liability for an improper custom may not be predicated on isolated or sporadic incidents. Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). There must be a causal link between an identifiable municipal policy or custom and the alleged constitutional deprivation. City of Canton, 489 U.S. at 385.

Here, plaintiff alleges that "Chief Hanh has already confirmed and stated the City has a long withstanding practice of falsely arresting and using excessive force on black people, through imperial studies and data released." ECF No. 18 at 8. Plaintiff attempts to rely on a newspaper article ("Exhibit C") to support this proposition. However, as noted above, the news story is hearsay (it cannot be used to prove the truth of the matter asserted) and therefore not admissible. Even if the court were to consider the news story, it relates to biased policing generally and does not demonstrate the existence of the type of specific policy or practice that would create Monell liability. ECF No. 19 at 7-9. The statement by Police Chief Hahn is mischaracterized by plaintiff and does not expressly confirm that a Monell-type policy or custom of false arrests or excessive use of force against Black people was created by the City. Id. at 9.

Plaintiff fails to meet his burden on summary judgment against the City because he has failed to produce evidence of any policy or custom that caused the alleged constitutional deprivations.

### 2. Constitutional Claims Against Individual Officers

Plaintiff fails to establish his entitlement to summary judgment against the individual officer defendants based on the standards that apply to each individual claim. Again, because it is plaintiff who moved for summary judgment, he must present evidence that shows each element of each claim is proven without the need for a trial, and that there are no disputed issues of material fact going to any element of a claim. The claims are addressed individually below.

a. Fourth Amendment: Unreasonable Seizure/Detention (First Claim)

"The Fourth Amendment proscribes only 'unreasonable' searches and seizures." Franklin v. Foxworth, 31 F.3d 873, 875 (9th Cir. 1994). Whether a detention or other seizure is "unreasonable" for Fourth Amendment purposes hinges on an objective test based on all of the circumstances present in a given situation: "a detention may be unreasonable in a particular instance either because the detention itself is improper or because it is carried out in an unreasonable manner." Id. at 876-76. When it comes to detention, "the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). Objective reasonableness in the Fourth Amendment context is evaluated from the perspective of a "reasonable officer on the scene," in light of all the facts and circumstances confronting them. Torres v. City of Madera, 648 F.3d 1119, 1124 (9th Cir. 2011) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)), cert. denied, 565 U.S. 1114 (2012); see also Franklin, 31 F.3d at 875-876 (noting that Graham standard applies to all detentions, not only those involving use of force).

Here, plaintiff argues that the defendant officers never articulated "a reasonable suspicion of me committing a crime for their illegal detainment and kept me detained and imprisoned for over an hour for no reason." ECF No. 1 at 6. However, the evidence presently before the court on this claim is disputed in part. For example, defendants contend in their interrogatory responses that when plaintiff was detained, the officers were engaged in an active investigation into a shooting, plaintiff refused to walk away from the scene as directed, and he was therefore detained because "he was making it unsafe for everyone at the scene." ECF No. 22-1 at 38. Under some circumstances the Fourth Amendment permits as reasonable the detention of a person who is not suspected of having committed a crime, including in "emergency situations" when local law enforcement officers are acting to "keep the peace." Maxwell v. County of San Diego, 708 F.3d 1075, 1084 (9th Cir. 2013). There is accordingly a dispute of material fact regarding the existence of a reasonable law enforcement justification for the detention at issue. That dispute defeats summary judgment.

1  Moreover, the evidence that is undisputed is insufficient to support a conclusion in
2  plaintiff's favor as to the unreasonableness of the officers' actions. Plaintiff relies on the body
3  camera footage, but this evidence does not and cannot show the "totality of the circumstances"
4  surrounding the detention. A determination of objective unreasonableness requires evidence of
5  *all* the facts and circumstances confronting the defendant officers at the time of their actions. The
6  body camera footage of Officer Delgado is three minutes and forty-nine seconds long and shows
7  multiple officers and multiple individuals in the front yard of a house, with additional individuals
8  visible inside the open door of the house. The Officer Melloch video is five minutes and nine
9  seconds long and mostly consists of a video of a patrol car steering wheel with verbal interactions
10 audible in the background. At the end of the video Officer Melloch leaves the patrol car and
11 begins walking toward a line of police tape, and other petrol vehicles are visible on the street.
12 The Officer Chocran video is four minutes and forty-two seconds long and shows plaintiff in the
13 patrol car with handcuffs off conversing with another officer who is standing outside the vehicle.
14 Multiple officers and multiple civilians are visible on the scene. Plaintiff is released from the
15 patrol car at the 3:22 mark. The patrol vehicle camera is one hour and thirty-seven minutes long,
16 and consists entirely of a view of the back of the patrol vehicle.

> Even when the videos are considered together, they provide only limited viewpoints as to the totality of the situation, which involved a large scene. The videos do not document things that happened before and after they were recorded, or that were happening outside the range of the camera but which would provide context critical to a reasonable officer's assessment of the situation. Interrogatory responses from the defendant City provide a description of the scene as follows: There was an active investigation into a shooting which occurred just prior to plaintiff being detained. Individuals were seen entering the residence at 2066 O'Neil Way after tossing firearms into bushes near the front door of the residence at 2066 O'Neil Way, Sacramento. Sacramento Police Department was investigating the shooting and determining who was involved in the shooting. After exiting the residence at 2066 O'Neil Way, plaintiff was asked to follow Officer Delgado toward the street.

ECF No. 22-1 at 38.

The footage on which plaintiff relies is undoubtedly relevant evidence, but it is legally insufficient to establish any defendant's liability because it does not provide a comprehensive evidentiary picture of *all* the facts and circumstances that must be considered in making a

9

determination of Fourth Amendment reasonableness. For this reason, because there are material factual disputes going to the Fourth Amendment question, summary judgment for plaintiff is not warranted.

          b. <u>First Amendment: Freedom of Speech (Second Claim)</u>

The First Amendment protects individuals from undue interference with their freedom of speech, assembly, and expressive association. U.S. Const., amend. I; <u>De Jonge v. State of Oregon</u>, 299 U.S. 353, 364 (1937). To demonstrate a First Amendment violation a plaintiff must show that "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." <u>Pinard v. Clatskanie Sch. Dist. 6J</u>, 467 F.3d 755, 770 (9th Cir. 2006). A plaintiff need not show his speech was actually inhibited or suppressed; instead it requires a demonstration that defendants "intended to interfere" with plaintiff's First Amendment rights. <u>Mendocino Env't Ctr. v. Mendocino County</u>, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotations omitted). <u>Id.</u> The Ninth Circuit has held that "the proper inquiry asks 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." <u>Id.</u> (quoting <u>Crawford–El v. Britton</u>, 93 F.3d 813, 826 (D.C. Cir. 1996), vacated on other grounds, 520 U.S. 1273 (1997) (internal quotation marks and citation omitted)).

The court assumes that plaintiff had a First Amendment right to record police officers engaged in their official duties. See <u>Adkins v. Limtiaco</u>, 537 F. App'x 721, 722 (9th Cir. 2013). However, plaintiff cannot meet his burden on summary judgment because the evidence before the court regarding defendants' intention is both disputed and incomplete. The claim is predicated on the allegation that plaintiff's phone was confiscated in order to keep him from recording an interaction with a peace officer. ECF No. 1 at 7. However, Officer Melloch responded in his interrogatories that when he confiscated plaintiff's phone, he informed plaintiff he was doing so because plaintiff having his phone while he was detained created an officer safety issue. ECF No. 22-1 at 70. There is therefore a disputed question as to defendant's intent, which is an essential element of a First Amendment claim. Further, the body camera footage submitted by plaintiff

does not provide a complete or clear picture of the circumstances surrounding the confiscation of plaintiff's phone, making it impossible for the court to determine on summary judgment why plaintiff's phone was taken. For these reasons, plaintiff cannot prevail on summary judgment as to this claim.

### c. Fourth Amendment: Excessive Force (Third Claim)

"An objectively unreasonable use of force is constitutionally excessive and violates the Fourth Amendment's prohibition against unreasonable seizures." Torres, 648 F.3d at 1123-24 (citing Graham, 490 U.S. at 394-396). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" Kingsley v. Hendrickson, 576 U.S. 389, 397-398, 399 (2015) (quoting Graham, 490 U.S. at 396). It is evaluated from the perspective of a reasonable officer in light of the totality of the facts and circumstances confronting them. Torres, 648 at 1124. Excessive force cases often turn on credibility determinations, and "[the excessive force inquiry] 'nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom.'" Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (alteration in original) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)). Therefore, "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Id. The Ninth Circuit has "held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury." Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (citations omitted).

Once again, plaintiff fails to meet his burden on summary judgment. The body camera footage does not provide a clear picture of the nature and degree of force used in plaintiff's detention. Moreover, as discussed in detail above, the footage documents parts of plaintiff's interactions with defendants but none of the contextual facts and surrounding circumstances that must be considered in determining whether any force used was objectively unreasonable. Because there are insufficient facts to support the elements of this claim, plaintiff is not entitled to summary judgment.

### d. Fifth Amendment: Violation of Right to Remain Silent (Fifth Claim)

The Fifth Amendment guarantees that "[n]o person ... shall be compelled in any criminal

case to be a witness against himself." U.S. Const. amend. V.  "The Fifth Amendment privilege is only properly invoked in the face of a real and appreciable danger of self-incrimination.  If the threat is remote, unlikely, or speculative, the privilege does not apply." United States v. Antelope, 395 F.3d 1128, 1134 (9th Cir. 2005) (internal quotations and citations omitted). "Ordinarily, the routine gathering of background biographical data will not constitute interrogation" for the purposes of the Fifth Amendment, but whether this is the case in any particular situation is a question that must be determined in light the totality of circumstances. United States v. Booth, 669 F.2d 1231, 1238 (9th Cir. 1981).  Importantly, the Ninth Circuit has recently held that unless a plaintiff makes a statement that is used in a criminal proceeding, he cannot bring a claim under § 1983 for a violation of his Fifth Amendment right against self-incrimination.  Chavez v. Robinson, 12 F.4th 978, 989 (9th Cir. 2021).

Here, plaintiff alleges defendants Hamm and Melloch violated his Fifth Amendment rights while they continued to question him and ask his name while he was detained.  ECF No. 1 at 9.  Plaintiff does not allege that any criminal proceeding resulted from this questioning.  Plaintiff cannot win summary judgment on this claim because it is not a viable legal claim in light of Chavez.  Even if there were a viable claim, plaintiff would not win summary judgment because, as discussed in detail above, the evidence before the court is partial and the court cannot determine whether the biographical questions asked of plaintiff (his name, whether he was on parole) constitutes interrogation under the totality of the circumstances, or whether there was a real and appreciable danger of self-incrimination.

        e.    Fourteenth Amendment: Violation of Equal Protection Clause (Sixth Claim)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (internal quotation omitted).  "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." Washington v. Davis, 426 U.S. 229, 239 (1976).  In a § 1983 claim alleging an equal protection violation, a plaintiff "must prove that the defendant

acted in a discriminatory manner and that the discrimination was intentional." FDIC v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991) (citing Stones v. Los Angeles Cmty. Coll. Dist., 796 F.2d 270, 275 (9th Cir. 1986)). Thus, to prevail, plaintiff must plead and prove facts that demonstrate that the defendant acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class, in this case, his race. Thornton v. City of St. Helens, 425 F.3d 1158, 1166–67 (9th Cir. 2005).

Plaintiff has not put forth any evidence that defendant officers acted with racial animus or discriminatory motive. Plaintiff's own conclusory statements such as "only black males were handcuffed and detained in patrol vehicles" are not enough. ECF No. 18 at 15. Plaintiff has identified the conduct that he believes was discriminatory, but not any evidence that supports a reasonable inference his treatment was motivated by racial animus. Plaintiff has not met his burden of showing that he is entitled to judgment on this claim.

B. Plaintiff Cannot Prevail on Summary Judgment for State Claims

In addition to plaintiff's § 1983 claims, plaintiff alleges three violations of state law. The same standard on summary judgment applies.

1. Bane Act Violation (Fourth Claim)

"The Tom Bane Civil Rights Act, 1987 Cal. Stat. 4544, was enacted in 1987 to address hate crimes. The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by threats, intimidation or coercion." Reese v. County of Sacramento, 888 F.3d 1030, 1040 (9th Cir. 2018). The relevant law is codified at Cal. Civ. Code § 52.1. To prevail on a Bane Act claim, a plaintiff must show that a defendant had a "specific intent" to violate his rights. Id. (citing Cornell v. City & County of San Francisco, 17 Cal. App. 5th 766, 799-800 (2017)). Here, plaintiff has not identified undisputed evidence demonstrating that his rights were violated or supporting a conclusion that any officer acted with specific intent. Plaintiff's conclusory statement that the officers acted with intent is not adequate to support liability; additional evidence and fact finding is necessary and summary judgment is not appropriate.

////

### 2. Battery (Seventh Claim)

The elements of civil battery are: (1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." Brown v. Ransweiler, 171 Cal. App. 4th 516, 527 (2009). "A state law battery claim is a counterpart to a federal claim of excessive use of force. In both, a plaintiff must prove that the peace officer's use of force was unreasonable." Id. As with the Fourth Amendment claim for excessive use of force discussed above, plaintiff proffers insufficient undisputed evidence to warrant summary judgment in his favor.

### 3. False Imprisonment (Eighth Claim)

The elements of a California State law false imprisonment claim are: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." Easton v. Sutter Coast Hospital, 80 Cal. App. 4th 484, 496 (2000) (citation omitted). "The only mental state required to be shown to prove false imprisonment is the intent to confine, or to create a similar intrusion." Fermino v. Fedco, Inc., 7 Cal. 4th 701, 716 (1994). The question of whether defendant officers acted with or without lawful privilege to detain plaintiff cannot be determined from the evidentiary record before the court. Again, the body camera footage does not provide an adequate or clear picture of the totality of the circumstances. Summary judgment is not warranted.

**Conclusion**

Accordingly, for the reasons explained above, IT IS RECOMMENDED that plaintiff's motion for summary judgment (ECF No. 18) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all

parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

     IT IS SO ORDERED.

DATED: September 30, 2022

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE